UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                                  :
DAG JEWISH DIRECTORIES, INC.,                     :       09 Civ. 7802 (RJH)
a New York corporation,                           :
                              Plaintiff,          :
                                                  :
           -against-                              :       MEMORANDUM OPINION
                                                  :            AND ORDER
Y & R MEDIA, LLC, a California limited            :
liability company, RAN ITACH and                  :
YOAHAN HAYOUN a/k/a/ YOANN ERIC                   :
HAYOUN                                            :
                              Defendants.         :
                                                  :
-------------------------------------------------------------x
```

Richard J. Holwell, District Judge:

      Defendants have moved for sanctions, including dismissal, because plaintiff has submitted forged documents to the Court.  In January 2010, the Court issued an opinion that noted apparent forgery and an intentional misquote in plaintiff's submissions.  In February, plaintiff somewhat ironically moved for contempt against defendants, and submitted yet more forged documents in support of its contempt motion.  That forgery was convincingly proven at an evidentiary hearing, and defendants subsequently made this motion for sanctions.  For the reasons stated below, the Court grants defendants' motion for sanctions, dismisses the action with prejudice, and awards defendant attorneys' fees to be computed based on further submissions.

## I.  Background

The following facts are undisputed.  Plaintiff DAG Jewish Directories is in the business of producing and distributing Jewish yellow pages—yellow pages geared towards the Jewish community, under the trade name "Dapey Assaf."  Defendants Y&R Media and Yoahan Hayoun are also in the Jewish yellow page business.  The two companies are connected in only one respect: Hayoun founded Y&R Media shortly after a brief tenure of employment with DAG's California office.

DAG filed the underlying complaint on September 10, 2009 alleging, *inter alia*, that Hayoun and Y&R were fraudulently misrepresenting themselves as affiliated with DAG in order to attract customers to Y&R's incipient Jewish yellow page service.  The Complaint also alleged that Hayoun had signed an employment agreement with DAG and that he was in breach of certain restrictive covenants that it contained.  On October 26, 2009, the Court issued a preliminary injunction ordering Y&R to:

> (1) Desist and refrain from engaging in any marketing activity that is likely to deceive prospective customers as to their affiliation with plaintiff;
> (2) Desist and refrain from physically using plaintiffs directory in marketing activities;
> (3) Desist and refrain from making verbal reference to plaintiff or plaintiff's directory in the course of marketing activities, unless such references state clearly and unequivocally that defendants' proposed publication has no connection to plaintiff or plaintiffs publication;
> (4) Hereafter maintain a record of each solicitation made in connection with the publication of defendants' directory. Such record must include the date of solicitation, whether the solicitation was made in person or by telephone, and the name, address and telephone number of the person solicited.
> [47]

The Court declined to rule on the employment agreement at that time because there was substantial dispute between the parties as to whether Hayoun had actually signed it.  Accordingly

the Court reserved decision and ordered expedited discovery as to the employment agreement.
[49]

On January 07, 2010, following expedited discovery and supplemental submissions, the Court issued a Memorandum Opinion and Order [73] denying plaintiff's request for a preliminary injunction with respect to the employment agreement.  The Court found that plaintiff had not demonstrated a likelihood of success on the merits because the validity of the contract and the enforceability of its covenants were both doubtful.  The Court questioned the validity of the contract because:

> Plaintiff has been unable to produce anyone with personal knowledge of [Hayoun's] signing the contract.  Defendant himself affirms, as does his immediate supervisor, that he did not.  The contract itself states that it was executed in Kew Gardens, New York, but the defendant was living in California at the time that he allegedly signed the document.  Plaintiff's expert did not conclude that the signature in question was the defendant's, but rather found only that the signature resembles Hayoun[']s and indicated that an original of the document would need to be provided before he could make any conclusions.  Plaintiff has been unable to produce an original of the document and has indicated that the originals are "missing."  (Ran Cert.  10.)  Four of the seven blanks on the document are not filled in, including the lines for employee address, social security number, and the line for a DAG agent's signature.  ([73], at 3-4.)

In discussing the validity of the contract, the Court also noted that it "contain[ed] an additional horizontal line running parallel to, but slightly below, the signature line on the form agreement, possibly indicating that the purported signature was a 'cut-and-paste' job."  ([73], at 4 n. 2.)

In questioning the enforceability of the restrictive covenants against Hayoun in California (where Hayoun and Y&R did business), the Court noted that the covenants were explicitly limited by their terms to Northern New Jersey.  The Court also noted that plaintiff's submission introducing the contract, the certification of DAG employee Erez Atzmon, misquoted the employment agreement so as to leave out the New Jersey limitation.  After quoting the relevant

sections of the employment agreement and the Atzmon certification, the Court explained that "[t]his does not appear to have been an inadvertent mistake.  Aside from that substantially altered sentence, the seven paragraphs of block text in paragraph six of the Atzmon certification precisely matches the employment agreement which it purports to quote."  ([74], at 4 n. 3.)

On February 1, 2010, plaintiff moved for contempt against defendants, alleging that they were continuing to misrepresent themselves as affiliated with DAG in violation of the preliminary injunction forbidding them from doing so.  Plaintiff explained that Erez Atzmon posed as a potential customer, met with Y&R for a fake sales meeting, and in so doing copied a number of their sales documents.  Some of these documents, plaintiffs alleged, contained references to DAG and used the "Dapey Assaf" trade name.

Among those documents was a purported copy of Y&R's sales contract that included the designation "Dapey Assaf Representative" under one signature line  (the other was designated "Advertiser" for the contracting customer).  Plaintiff submitted a photocopy of that contract, bearing index number 31200, to the Court, and the submitted copy did indeed bear the "Dapey Assaf Representative" mark.  However elsewhere in larger font it bore defendants' marks, "American Jewish Yellow Pages" and "Y&R Media."  Plaintiff alleged that defendants were using the "Dappey Assaf" mark on the contract to misrepresent their affiliation with that organization and in violation of the preliminary injunction.

On February 23, 2010 the Court held an evidentiary hearing on plaintiff's motion for contempt.  At the hearing, defendants submitted their own version of the Y&R contract, identical to that submitted by plaintiff but lacking the "Dapey Assaf" mark.  Y&R apparently produced its contracts by having a printer, "Donovan for Printing," print modified copies of a DAG contract

4

altered to remove references to Dapey Assaf and to insert references to Y&R.[1]   Defendant

asserted that it had never used contracts bearing the "Dapey Assaf" mark.  Rather, defendant

argued that the contract submitted by plaintiffs, bearing index number 31200 and the "Dapey

Assaf" mark, was a forgery.  In support of their allegations of forgery defendants introduced the

following evidence: (1) the original Y&R contract bearing index number 31200, which lacked

the "Dapey Assaf" mark, (2) a booklet of Y&R numbered contracts, all of which lacked the

"Dapey Assaf" mark, (3) a Y&R contract previously obtained and submitted to the Court by

*plaintiffs* bearing index number 31053, which also lacked the "Dapey Assaf" mark, and (4)

contract proof materials from the printing company, "Donovan for Printing," which lacked the

"Dapey Assaf" mark.  Erez Atzmon, testifying for plaintiff, nonetheless maintained that the

Y&R contract read "Dapey Assaf" at the time that he copied it, and that the version he copied

was submitted to the Court unaltered.  The Court did not find Mr. Atzmon's in-person testimony

credible.  Yoahan Hayoun, testifying for defendants, asserted that Y&R has never under any

circumstances used an advertising contract that said "Dapey Assaf" under the signature line.  The

Court found that testimony credible.

    At the conclusion of the evidentiary hearing, the Court requested post hearing

submissions from counsel addressing two issues: (1) whether defendants had acted in contempt

of the Court's preliminary injunction, as alleged by plaintiffs; and (2) whether altered documents

had been submitted to the Court and, if so, the proper remedy.  (Feb. 23 Hr. Tr. 103:17-22.)

Defendants then moved for sanctions against plaintiff, against Erez Atzmon, and against DAG's

former attorney Lauren Cohen, who had handled the proceedings.  Plaintiff's new counsel (Ms.

---

[1] A copied contract that bears the "Dapey Assaf" name would have a vastly different impact on the merits
than one from which it was removed.  If, as plaintiff wanted the Court to believe, Y&R used the "Dapey
Assaf" name, then it was in violation of the preliminary injunction.  On the other hand if it removed the
reference to Dapey Assaf, it evinced an intent to avoid confusion between the companies.

Cohen withdrew shortly after the evidentiary hearing) filed a response, and further requested that the Court allow an opportunity for Mr. Atzmon and Ms. Cohen to respond.  The Court permitted their replies, and has now received several submissions on their behalf as well.

## II.  Discussion

This Court has "the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants."  *Shangold v. Walt Disney Co.*, No. 03-9522, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (plaintiffs materially misrepresented timing of crucial communication, case dismissed with prejudice and attorneys' fees and costs awarded).  In the case of a fraud on the court, that power includes the "powerful sanction" of dismissal with prejudice without reaching the merits.  *See McMunn v. Memorial Sloan-Kettering Cancer Center*, 191 F. Supp. 2d 440, 461 (2002) (plaintiff lied at deposition, case dismissed with prejudice and $20,000 fine imposed).  However dismissal is a "harsh remedy, not to be utilized without a careful weighing of its appropriateness … [and] one of the factors that should inform a trial court's decision is the suitability of lesser sanctions."  *Dodson v. Runyon*, 86 F.3d 37, 39 (2d Cir. 1996) (vacating dismissal for failure to prosecute).  Nonetheless "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his rights to have his claim decided on the merits."  *McMunn*, 191 F. Supp. 2d at 445.

Fraud on the court must be established by clear and convincing evidence.  *E.g. Shangold*, 2006 WL 71672, at *4.  Courts in this district typically weigh five factors in determining the appropriate sanction for a fraud on the court: "(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and

when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future." *McMunn*, 191 F. Supp. 2d at 446; *Shangold*, 2006 WL 71672, at \*4.

The most egregious evidence of fraud on the court is with respect to plaintiff's Hearing Exhibit 2, the purported Y&R advertising contract that contained the words "Dapey Assef Representative" beneath the signature line. The objective evidence that it is a forgery is overwhelming. First, the original of contract number 31200, from which plaintiff's submission was purportedly copied, lacks the "Dapey Assaf" mark. Plaintiff's argument that Y&R "must have" printed two different sets of contracts, with only that mark different and with overlapping index numbers so as to create duplicate 31000 series, is entirely unconvincing. Second, Y&R contract number 31053, which was submitted by plaintiffs in an earlier part of this litigation, does not bear the "Dapey Assaf" mark. Third, all of the contracts in the Y&R contract book lack the "Dapey Assaf" mark. Fourth, the proof materials from Donovan for Printing lack the "Dapey Assaf" mark. Relying on this objective evidence alone, plaintiff's forgery has been proven by clear and convincing evidence.

Furthermore the notion that Y&R would produce a second set of contracts using the "Dapey Assaf" mark in small text under the signature line strains credulity. Even the forged 31200 contract contains Y&R's independent marks, in larger font, at the top of the page. If defendants sought to misrepresent themselves, why would they bury their misrepresentation in small text at the bottom of the page? And why would Y&R print two different sets of contracts, with the only difference a minor change to the signature line, and with overlapping index numbers? The only rational answer to both questions is that defendants would not, and that in turn they did not produce the "Dapey Assaf" 31200 contract.

Plaintiff contends that the testimony of its document examiner, John F. Breslin, "supports that the Dapey Assaf signature line was present at the time of the presentation." (Atzmon/Cohen Mem. 18.) It does not. Mr. Breslin only found, on the basis of 'trash marks' common to each document, that the forged 31200 contract and several real Y&R contracts were from the "same common source." (Breslin Decl. at ¶ 20.) However defendants concede that their contracts were all from the same source, Donovan for Printing. As even plaintiff admits, "Y&R's [sic] must have given Donovan for Printing a DAG contract, and instructed them to reproduce it almost exactly." (Atzmon/Cohen Mem. 24.) The forgery occurred thereafter, when plaintiff acquired one of the resultant Y&R contracts, altered it to add a Dapey Assaf line, and then submitted it to the Court as if it had acquired it in that form. The trash marks would have been copied in that forgery along with the rest of the document. To put it another way: if the source generated the real Y&R contract, and the real contract was used to create the forgery, then both the forgery and the real Y&R contract would be descended from the same original source. Mr. Breslin's finding that the Y&R contracts are from the same common source is therefore unremarkable, and does not refute defendants' version of events.

In light of the overwhelming objective evidence demonstrating a forgery, plaintiff's assertions that the "Dapey Assaf" signature line on Hearing Exhibit 2 is not a forgery cannot be believed. Moreover, it could not have been accidental: a forgery of this nature could only result from intentional bad faith. Furthermore, the fraud prejudiced defendants—they have been forced to defend a contempt motion based on the forged contract and other similar materials.[2] Accordingly defendants have demonstrated plaintiff's forgery by clear and convincing evidence

---

[2] The Court does not credit plaintiffs' other contempt hearing submissions, which were likely forged along with the 31200 contract. However because defendants have not demonstrated those forgeries by clear and convincing evidence, the Court does not base the decision to impose sanctions on those documents.

and the first two factors, intentional bad faith and prejudice, weigh in favor of dismissal and against the use of lesser sanctions.

The other three factors—pattern of misbehavior, whether the misconduct was corrected, and whether further misconduct is likely—all also weigh in favor of dismissal.  First, plaintiff has engaged in a pattern of misbehavior, submitting this forgery after being warned that the Court considered Hayoun's purported employment agreement a possible "cut-and-paste" job,[3] and after being chastised for intentionally misquoting a crucial portion of that contract.[4]  Second, the misconduct has not been corrected—in the face of overwhelming objective evidence plaintiff still brazenly asserts the veracity of the "Dapey Assaf" 31200 contract, and even argues that it is evidence of *defendants'* contempt.  (Pl. Post-Hearing Mem. 22 ("Plaintiff's [sic] Hearing Exhibit 2 is genuine and is damning evidence of contempt"); *see also id.*, at 25 (section titled "The Fact that Y&R Produced An Original Contract Numbered 31,200 Is Of No Evidentiary Value").)

---

[3] Plaintiff now argues that the Hayoun employment agreement was not a cut-and-paste job and expresses confusion at how the double underline referenced in the Court's earlier opinion would have resulted from forgery.  "In the absence of any clear explanation as to how the upper signature line could be visible if the document had been modified after it had been signed, it stands to follow that the employment agreement had both signature lines before it was signed."  (Atzmon/Cohen Mem. 29.)  The explanation is that the forgery was done by way of a transparency sheet.  Whoever committed the forgery copied Hayoun's signature, including just the portion of line that it crossed, onto a transparency sheet, and then copied the transparency sheet on top of the employment agreement.  That is why the second signature line appears only along the lowest swoop in Hayoun's signature and why it appears below and at a slight angle to the primary signature line.

The fact that the second signature line matches the lowest swoop in Hayoun's signature belies any argument that the line was introduced through some other alteration.  Plaintiff suggests that the second line may have been somehow formed when Avi Shefi's name was removed from the *other* signature line, the manager line.  But it seems improbable that an alteration there would cause a shortened extra line to appear under the other signature line.  And it is yet more improbable that Hayoun would happen to sign in such a way that the swoop in his signature overlapped perfectly with the misprinted line.  By a wide margin the more probable cause of the secondary line is a forgery of Mr. Hayoun's signature.

[4] Plaintiff now contends that the mis-quote, which omitted crucial language limiting the contract and foreclosing the requested relief, was "scrivener's error."  However plaintiff fails to submit a certification from the errant scrivener or any other evidence that would tend to support that assertion.  (*See* Cohen May 21 Aff. ¶ 44 ("I do not recall which [of two assistants] would have assisted with this particular Certification….However, I would have directed one of those two individuals to transcribe Defendant Hayoun's employment agreement into the 12/9/09 Atzmon Cert.").)

Finally, in light of the past pattern of misconduct and lack of admission or remorse, further misconduct seems likely.

Defendants have proven plaintiff's fraud on the court by clear and convincing evidence. And although the Court does not take the remedy of dismissal lightly, this is a case where it must be used.  Nothing less than outright dismissal would deter similar misconduct or sufficiently punish plaintiffs.  Accordingly, the Court invokes its inherent power to deter abuse of the judicial process and dismisses plaintiff's case with prejudice.[5]

Defendants also seek an award of attorneys' fees.  Other courts in similar situations have awarded attorneys' fees to the litigants forced to oppose fraudulent submissions.  *See Shangold v. Walt Disney Co.*, 2006 WL 71672, at *6 (attorneys' fees and costs awarded because plaintiffs imposed "substantial burdens on Defendants including attorneys' fees, costs, and the attendant inconvenience and distraction of defending this litigation"); *Scholastic v. Stouffer*, 221 F. Supp. 425, 444 (S.D.N.Y. 2002) (attorneys' fees and costs awarded because defendant "has engaged in a pattern of intentional bad faith conduct and failed to correct her fraudulent submissions, even when confronted with evidence undermining the validity of those submissions"); *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 583 (S.D.N.Y. 1996) (attorneys' fees and costs awarded because "defendants' conduct led plaintiffs' counsel on an ardous chase.").  Plaintiff's conduct with respect to this contempt motion has surely burdened defendants with significant investigative and legal costs.  However the fraud that has been convincingly proven does not extend backwards beyond the contempt motion.  Accordingly the Court awards defendants only

---

[5] Defendants also seek sanctions against Erez Atzmon and Lauren Cohen as individuals.  Even if misconduct were attributable to them in their individual capacities, the Court would decline in its discretion to extend sanctions to Ms. Cohen and Mr. Atzmon.  *See* Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.").

those attorneys' fees and costs that have been incurred in connection with the filing of plaintiff's contempt motion and with defendants' cross-motion for sanctions.

## III. Conclusion

For the foregoing reasons, defendants' motion for sanctions is granted and plaintiff's complaint is dismissed in its entirety, with prejudice. Plaintiff's underlying motion for contempt [81] is denied. Furthermore the Court awards defendants those attorneys' fees incurred since the contempt motion was filed on February 10, 2010, in an amount to be determined based on further submissions.

SO ORDERED.

Dated: New York, New York
     August 11, 2010

Richard J. Holwell
United States District Judge

11